IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES LEWIS JACKSON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-03-3391 |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice- | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER**

This case is before the Court on Petitioner James Lewis Jackson's Petition for Writ of Habeas Corpus, and Respondent Doug Dretke's Motion for Summary Judgment. Having carefully considered the Petition, the Summary Judgment Motion, the evidence, and the arguments and authorities submitted by counsel, the Court is of the opinion that Respondent's Motion for Summary Judgment should be GRANTED, and Jackson's Petition for Writ of Habeas Corpus should be DENIED.

I.   Background

Petitioner James Lewis Jackson, currently in the custody of the Texas Department of Criminal Justice, filed this federal habeas corpus application pursuant to 28 U.S.C. § 2254. Because this is Jackson's first application for federal habeas relief, a brief history of the case is appropriate.[1]

The trial evidence showed that on June 8, 1997, Jackson strangled his wife and her two

---

[1] For the sake of convenience, the key facts surrounding the case are adapted largely from the opinion of the Texas Court of Criminal Appeals affirming Jackson's conviction and sentence. *See Jackson v. State*, 33 S.W.3d 828 (Tex.Crim.App. 2000), *cert. denied*, 532 U.S. 1068 (2001). Where this opinion diverges from, or expands upon, the Texas Court of Criminal Appeals' recitation of the facts, it will be noted by specific citations to the record.

daughters (Jackson's stepdaughters) because his wife, Sharon Jackson, intended to divorce him. He later pawned his wife's sewing machine to buy drugs. The State's case depended largely on Jackson's confession.

In his confession, Jackson stated that one of his stepdaughters, Sonny, came home at about 2:30 p.m. He asked her to come into the master bedroom so they could talk. Jackson strangled Sonny and moved the body to her bed so that his other stepdaughter would not see the body. The other stepdaughter, Ericka, arrived home at about 2:55 p.m. Jackson followed the same pattern, and strangled Ericka in the master bedroom, then moved her body to another bed. At about that time, Sharon called and asked Jackson to pick her up at work. Jackson talked to Sharon, who stated that she still intended to seek a divorce. Jackson then strangled Sharon. 15 Tr. at 127-32.[2]

The evidence from the pretrial suppression hearing shows the victims were murdered and their bodies were discovered in an apartment they shared with Jackson. Soon after the victims' bodies were discovered on the morning after the murders, Jackson arrived at the crime scene while the police were processing it and conducting their investigation. The police quickly learned that Jackson lived in the apartment and was married to one of the victims.

Several of the victims' family members were also at the crime scene. One of these family members asked Jackson what he had done to the victims. Jackson expressed no curiosity about what this family member meant by this question and he did not ask anything about the victims or why the police were in his apartment. Jackson also did not appear upset or surprised about what was going on.

Another one of the victims' family members cursed Jackson and accused him of killing the

---

[2] "Tr." refers to the transcript of Jackson's trial.

victims. The police had to separate Jackson from the victims' family members who continued to shout threats at him. Partly because of the confrontation between the victims' family members and Jackson, the police put Jackson, unhandcuffed, in the back of a police car.

The police soon discovered a handwritten note in the victims' apartment. This note stated, "I love [the victims' first names]. I could not take care of my family. I don't have a job. I gave them back to God. He and they will understand. James." One of the investigating officers then spoke to Jackson in the back of the police car. When the detective asked Jackson where he was the previous evening, Jackson stated that he left the apartment at about 4:15 p.m. and did not return until his recent arrival at the scene. Jackson also stated he had a drug problem and could not keep a job.

Jackson agreed to accompany the police to the homicide office to give a statement. Police handcuffed Jackson and transported him to the homicide office in the back of a police car. The police told Jackson that he was not under arrest and that this was standard procedure. An officer testified that another reason Jackson was transported to the homicide office in handcuffs was for the officer's safety because Jackson was 6'6" and weighed over 300 pounds. Jackson eventually confessed to the murders. According to the police, he was not under arrest when he confessed. The trial court denied Jackson's motion to suppress the confession.

The prosecution presented this evidence at trial. Jackson testified for the first time at trial that the police never let him leave the police car after he was initially put there. He also testified that when the police handcuffed him for the ride to the homicide office they told him he was under arrest.

The jury found Jackson guilty of capital murder for murdering more than one person during the same criminal transaction. 16 Tr. at 71. During the penalty phase, the State presented evidence that Jackson was previously convicted of the felony offense of injuring an elderly person; Jackson shot the victim in the face. The jury concluded that Jackson should be sentenced to death. 18 Tr. at 8-9.

II. Discussion

3

A. The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which became effective April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Kitchens v. Johnson*, 190 F.3d 698, 700 (5th Cir. 1999).

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]." *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). Under the "contrary to" clause, this Court may afford habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'" *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 406. "In applying this standard, we must decide (1) what

4

was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999). A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd*, 286 F.3d 230 (5th Cir. 2002) (en banc), *cert. denied sub nom. Neal v. Epps*, 537 U.S. 1104 (2003). The solitary inquiry for a federal court under the 'unreasonable application' prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254 (d)(2); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert. denied*, 522 U.S. 1119 (1998).

    B.    <u>The Standard for Summary Judgment in Habeas Corpus Cases</u>

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v.*

*Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000). Insofar as they are consistent with established habeas practice and procedure, the Federal Rules of Civil Procedure apply to habeas cases. *See* Rule 11 of the Rules Governing Section 2254 Cases. In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts in the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) (The "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). However, where a state prisoner's factual allegations have been adversely resolved by express or implicit findings of the state courts, and the prisoner fails to demonstrate by clear and convincing evidence that the presumption of correctness established by 28 U.S.C. § 2254(e)(1) should not apply, it is inappropriate for the facts of a case to be resolved in the petitioner's favor. *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Foster v. Johnson*, 293 F.3d 766, 777 (5th Cir.), *cert. denied sub nom Foster v. Epps*, 537 U.S. 1054 (2002); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001); *Emery v. Johnson*, 940 F.Supp. 1046, 1051 (S.D. Tex. 1996), *aff'd*, 139 F.3d 191 (5th Cir. 1997), *cert. denied*, 525 U.S. 969 (1998). Consequently, where facts have been determined by the Texas state courts, this Court is bound by such findings unless an exception to 28 U.S.C. § 2254 is shown.

    D.    <u>Summary Judgment in the Instant Case</u>

Jackson asserts that: (1) The trial court improperly excluded victim impact testimony during the penalty phase; (2) his confession was obtained as the result of an unlawful arrest; and (3) the Texas statute under which he was convicted is unconstitutionally vague as applied to him. These claims are addressed in turn.

    1.    <u>Victim Impact Testimony</u>

Jackson filed a pretrial motion to allow testimony by his family and friends on the effect a

death sentence would have on them. The trial court denied this motion. In his first claim for relief, Jackson argues that this ruling violated his Eighth and Fourteenth Amendment rights.

In *Lockett v. Ohio*, 438 U.S. 586, 608 (1978), a plurality of the Supreme Court held "that the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record . . . as a basis for a sentence less than death." 438 U.S. at 604 (emphasis in original). This holding is based on the plurality's conclusion that death "is so profoundly different from all other penalties" as to render "an individualized decision . . . essential in capital cases." *Id.* at 605. The Court has reiterated this requirement of individualized sentencing consideration in many other cases. *See, e.g.*, *Penry v. Lynaugh*, 492 U.S. 302 (1989); *Eddings v. Oklahoma,* 455 U.S. 104, 109-17 (1982). These cases have consistently held, however, that the scope of constitutionally protected mitigating evidence is evidence reflecting on the defendant's background or character, or on the circumstances surrounding the crime. *See Tuilaepa v. California*, 512 U.S. 967, 972-80 (1994). "'What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime.' That requirement is met when the jury can consider relevant mitigating evidence of the character and record of the defendant and the circumstances of the crime." *Id.* at 972 (quoting *Zant v. Stephens*, 462 U.S. 862, 879 (1983)). The scope of mitigating evidence must be sufficiently broad "to assure an assessment of the *defendant's culpability*." *Id.* at 973 (emphasis added).

Jackson cites no case holding that evidence unrelated to his character or background or the circumstances of the crime falls within the scope of *Lockett* and its progeny. Instead, Jackson relies on *Payne v. Tennessee*, 501 U.S. 808 (1991).

In *Payne*, the Supreme Court held that the Eighth Amendment does not bar the admission of victim impact testimony by those affected by the defendant's crime. The Court reasoned that "the

7

consideration of the harm caused by the crime [is] an important factor in the exercise of [sentencing] discretion." *Id.* at 820. Victim impact testimony is a mechanism by which the sentencer is informed of the degree of harm caused by the crime. *Id.* at 824-25.

In contrast, the testimony Jackson wished to present was not victim impact testimony. Rather, Jackson wanted to present testimony by *his* friends and family on how a death sentence and execution would affect *them*. This evidence, however, is not relevant either to the degree of harm Jackson's crime caused or to Jackson's moral culpability for the crime. Accordingly, this evidence does not fall within the scope of *Payne* or *Lockett*. At a minimum, the Texas courts' conclusion that Jackson was not entitled to present this evidence is not an unreasonable application of Supreme Court precedent. Therefore, Jackson is not entitled to relief on this claim.

    2.  Jackson's Confession

In his second claim for relief, Jackson argues that the police obtained his confession after arresting him without probable cause. Jackson raised this claim in a pretrial evidentiary motion. The trial court conducted a suppression hearing, 11 Tr. at 10-147, 12 Tr. at 7-48, and denied the motion without stating any reasons for the decision. 12 Tr. at 48.

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). Jackson argues that he did not receive a full and fair opportunity to litigate his Fourth Amendment claim because the trial court summarily denied his motion to suppress. The record makes clear, however, that the trial court reached its decision only after holding an extensive suppression hearing. Nothing in *Stone* purports to require a detailed explanation of a court's reasons for denying a motion to suppress; *Stone* only requires a full and fair opportunity to litigate the issue.

The Fifth Circuit has held, however, "that where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court." *O'Berry v. Wainwright,* 546 F.2d 1204, 1213 (5th Cir.), *cert. denied*, 433 U.S. 911 (1977). In this case, the Texas Court of Criminal Appeals considered Jackson's Fourth Amendment claim on his direct appeal, and, in a reasoned opinion, found that Jackson's confession was not obtained in violation of his Fourth Amendment rights. *Jackson v. State*, 33 S.W.3d 818, 832 (Tex.Crim.App. 2000), *cert. denied*, 532 U.S. 1068 (2001).[3] Jackson makes a generalized argument that the Texas Court of Criminal Appeals "fails to provide any meaningful review of criminal convictions." He presents no evidence, however, that *he* did not receive meaningful appellate review, and a review of the Court of Criminal Appeals' decision makes it clear that the court did consider his Fourth Amendment claim.[4] Jackson therefore received a full and fair opportunity to litigate his Fourth Amendment claim, and he is not entitled to federal habeas corpus relief on this claim.

3. <u>Void For Vagueness</u>

In his third claim for relief, Jackson argues that the Texas capital murder statute is unconstitutionally vague, as applied to him. Texas Penal Code § 19.03(a)(7)(A) provides that a person is guilty of capital murder if he murders more than one person during the same criminal transaction. Jackson argues that this statute is unconstitutionally vague because it does not define

---

[3] On direct appeal, Jackson conceded probable cause, but argued that the arrest was illegal because it was warrantless. *Jackson*, 33 S.W.2d at 831-32. The Court of Criminal Appeals found both that the arrest was proper and that, even if the initial arrest was illegal, probable cause arose with the discovery of Jackson's handwritten note. Because the confession came after discovery of the note, any taint was already removed. *Id.* at 832.

[4] While Jackson argues that the Court of Criminal Appeals decided this issue erroneously, an erroneous state court decision is not sufficient to overcome the *Stone* bar. *See Williams v. Brown*, 609 F.2d 216, 219-20 (5th Cir. 1980).

what constitutes a single criminal transaction, and because the Texas courts have interpreted the statute to require that the multiple murders occur in a shorter period of time than Jackson took to commit his murders.

Jackson did not object at trial to the application of the statute. The Texas state habeas court therefore found that this claim was defaulted. SH. at 72.[5]

The procedural default doctrine may bar federal review of a claim. "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). The Supreme Court has noted that

> [i]n all cases in which a state prisoner had defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 750-51), *cert. denied*, 523 U.S. 1125 (1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (finding the cause and prejudice standard to be "grounded in concerns of comity and federalism").

Jackson makes no argument that there was cause for his procedural default. Therefore, this Court may not review this claim.

### III.   Certificate of Appealability

---

[5]   "SH." refers to the transcript of Jackson's state habeas corpus proceeding.

Jackson has not requested a certificate of appealability ("COA"), but this Court may determine whether he is entitled to this relief in light of the foregoing rulings. *See Alexander v. Johnson*, 211 F.3d 895, 898(5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny a COA *sua sponte*. The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued.") A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for COA until the district court has denied such a request. *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does."). "A plain reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone." *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997).

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d 429, 431 (5th Cir. 1998). A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000). The Supreme Court has stated that

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where . . . the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at

> least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "The nature of the penalty in a capital case is a 'proper consideration in determining whether to issue a [COA], but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate.'" *Washington v. Johnson*, 90 F.3d 945, 949 (5th Cir. 1996) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)), *cert. denied*, 520 U.S. 1122 (1997). However, "the determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001).

This Court has carefully considered each of Jackson's claims. While the issues Jackson raises are clearly important, the Court finds that each of the claims is foreclosed by clear, binding precedent. Therefore, Jackson has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court concludes that Jackson is not entitled to a certificate of appealability.

## IV. Order

For the foregoing reasons, it is ORDERED as follows:

1. Respondent Doug Dretke's Motion for Summary Judgment (Docket Entry 8) is GRANTED;

2. Petitioner James Lewis Jackson's Petition for Writ of Habeas Corpus (Docket Entry 5) is in all respects DENIED, and Jackson's Petition is DISMISSED; and

3. No Certificate of Appealability shall issue.

The Clerk shall notify all parties and provide them with a true copy of this Order.

**SIGNED** this 14th day of June, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE